To prove that the defendant did debauch and get the plaintiff's daughter with child, the plaintiff's counsel first offered the examination of the daughter, Catharine McFarland, deceased, which was taken before two magistrates, wherein she charged the defendant with having been the father of a child with which she was then pregnant, in order to charge the defendant with the maintenance of said child, according to the act of Assembly. Objections were made to this testimony, and the presiding judge decided it to be inadmissible. The plaintiff then offered to prove the declarations of the daughter, in her last illness and made in view and expectation of death. To this evidence, also, the defendant objected; but the objection was overruled.
The plaintiff then proved that the daughter was sick in childbed for about ten days, at this house, which was her usual place of residence; that three medical gentlemen were called to her; two of whom attended her together, and the other some time afterwards; that several times during that illness she declared that the defendant was the father of the child with which she was then pregnant; and that after all hope of life was gone, she desired that defendant might be sent for, and upon being informed that he would not see her, exclaimed: "I am going; He will soon go, too — where he will be obliged to see me, and will not dare to deny the truth." Upon this evidence, the jury found for the plaintiff. (201)
1. If the said examination of the daughter was admissible in evidence, then the verdict to stand.
2. If neither the examination nor the declarations of the daughter, which were received, should be deemed admissible, then the verdict to be set aside and a new trial granted.
This action is brought by the father for an injury done to him by the loss of his daughter's service, in consequence of her seduction by the defendant and incidental illness. The examination of the father before the magistrate is made evidence against the putative father solely for the purpose of charging him with the maintenance of the child; and so far it is conclusive evidence, because he can adduce no evidence to repeal its force or exonerate himself from the burden. To that single object the act of 1741 expressly confines it, and the Court cannot give it a greater extent without subverting every principle of just construction established in relation to statutes altering the common law, as well as violating the spirit and policy of the general law of evidence; for the act neither requires the putative father to be summoned nor furnishes him with the means of having the benefit of a cross-examination. It is a question between the county and the father who shall bear the charge of the child, and in receiving the examination for that purpose the letter and spirit of the law are obeyed: but if it be received for any other purpose, we must wander from both, and, in so doing, offer violence to the common law and inflict a wound upon private rights. Shall such examination be conclusive evidence against the father in an action constituted as this is, between him and the injured parent, when if the daughter had negatived his being the father, it could not have been received in his favor? The very statement of the proposition furnishes the answer. In both cases it is resinter alios acta, and cannot on either side be admitted for the purposes of this action.
2. The declaration made by the daughter during her last (203) illness, and under the apprehension of approaching death, was accompanied with an impressive solemnity — a forcible appeal to every honest mind, a pathetic claim to confidence from the best feelings of the heart, as well as the most austere duties of the judgment, that seem to entitle it to as much consideration as any such evidence has hitherto received.
In cases where life is at stake, such evidence is uniformly received and credited, and numerous are the victims to its authority recorded in the mournful annals of human depravity. Can the practice of receiving it to destroy life, and rejecting it where a compensation is sought for a civil injury, derive any sanction from reason, justice, or analogy? And though no direct precedent may exist to guide the Court, yet it must be recollected that the law consists of principles, which precedents only tend to illustrate and confirm. In Woodcock's case the dying declarations were received, although the party wounded had not expressed any apprehensions of dying; because he had received a mortal wound, and his situation was such as would naturally preclude all temptation *Page 157 
to falsehood. The case before us is stronger, for the woman believed she was dying, and so expressed herself. It is also a circumstance in this case, upon which we chiefly ground ourselves, that the fact disclosed in her declaration could only be proved by herself; she was the injured party through whom the cause of action has arisen to the father. We give no opinion how far the dying declarations of an indifferent person, not receiving any injury, and not a party to the transaction, would be evidence in a civil case. Our decision is confined to the state of facts presented in this case; and in that we think the verdict has been properly found and ought not to be disturbed.
Cited: Barfield v. Britt, 47 N.C. 42; Burgess v. Lovengood, 55 N.C. 461.
(204)